UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| WRB, Inc. d/b/a Hammer-Schlagen,<br><br>Plaintiff,<br><br>v.<br><br>The Lumberjack Company, Inc. and Sara Jespersen<br><br>Defendants. | Court File No. 21-1599<br><br>**Complaint for Trademark, Trade Dress Infringement, Unfair Competition, and Breach of Contract**<br><br>**Jury Trial Demanded** |

Plaintiff WRB, Inc. d/b/a Hammer-Schlagen for its complaint against defendants The Lumberjack Company, Inc., and Sara Jespersen, states and alleges as follows:

### NATURE OF THE ACTION

1. This is an action that seeks a permanent injunction and an award of actual or statutory damages for defendants' intentional counterfeiting of the Hammer-Schlagen brand comprised of distinctive trademarks and trade dress.

2. WRB and its predecessors have been the exclusive source of a particular nail-driving competition offered under the brand Hammer-Schlagen since at least the late 1980s. WRB's trademarks, including Hammer-Schlagen, its logo, and slogans such as Let's Play Hammer-Schlagen, Got Wood, Get Hammered, Get Nailed, Get Bent, and Whack It, have become immensely popular throughout the United States, particularly at beer festivals, bars, and Octoberfests.

3. WRB's design and layout of its nail-driving game are also unique and were granted trade dress protection by the U.S. Patent and Trademark Office.

4. The Lumberjack Company is an axe-throwing club in Stillwater, Minnesota. Sara Jespersen is an owner and CEO of The Lumberjack Company.

5. The Lumberjack Company entered a one-year license agreement with WRB to have Hammer-Schlagen at its facility. Jespersen signed the contract on the company's behalf. It terminated the license but continued to offer Hammer-Schlagen at its facility, in willful violation of WRB's intellectual property rights.

6. This action is to protect WRB's goodwill and intellectual property by enforcing WRB's rights under the Lanham Act.

## PARTIES

7. WRB, Inc. d/b/a Hammer-Schlagen is a Minnesota corporation with its registered office at 5865 Neal Ave N, #113 in Stillwater, Minnesota.

8. Defendant The Lumberjack Company is a Minnesota corporation with its registered office address at 1104 Meadowlark Drive, Stillwater Minnesota. It operates at 123 2nd Street North, Suite 102, Stillwater, Minnesota.

9. Defendant Sara Jespersen is an individual residing in Minnesota. She is an owner and the CEO of The Lumberjack Company.

10. Jespersen oversaw and was responsible for the actions of The Lumberjack Company described below.

## JURISDICTION

11. This Court has original subject matter jurisdiction over the trade dress infringement and trademark infringement claims pursuant to 15 U.S.C. § 1121(a) and 28

U.S.C. §§ 1331 and 1338(a) because they arise under the Lanham Act, 15 U.S.C. § 1501 et seq.

12. This Court has supplemental jurisdiction over Plaintiff's claims arising under state law under 28 U.S.C. § 1367, as those claims form part of the same case or controversy.

13. The Lumberjack Company is a Minnesota corporation offering its services in Stillwater, Minnesota. WRB's claims for relief arose in this district, making venue over the claims proper in this district pursuant to 28 U.S.C. § 1391.

## WHAT IS HAMMERSCHLAGEN?

14. In 1957, a child named Carl Schoene immigrated with his family from Germany to St. Paul, Minnesota. He brought with him a game he played with his friends in Germany in which players took turns trying to drive a nail into something – a board, a tire, or the ground – with one swing of an axe.

15. The variation Schoene played and taught his friends used a cross-peen hammer, and the nails were driven into the perimeter of a tree stump. Schoene called his version of the game Nagelspiel.

16. When his family started a restaurant near Stillwater, Schoene's game was played at the restaurant and at festivals as a marketing tool for the restaurant.

17. In the late 1980s, Schoene's father-in-law, Mike Wlaschin, took over the game. He standardized the use of cottonwood cross-sections and 16d common bright nails and rebranded the name as "Hammer-Schlagen."

18. From the late 1980s through 1999, Wlaschin promoted the service under the brand Hammer-Schlagen throughout Minnesota and Western Wisconsin. He was the only person using the name Hammer-Schlagen and the only person marketing the entertainment service using his particular design.

19. In 1999, Wlaschin formed WRB, Inc. solely for the purpose of marketing and promoting Hammer-Schlagen. The company acquired a federal trademark registration for its logo in 2000:



20. WRB has continuously and exclusively promoted its services under the Hammer-Schlagen brand since it was formed.

21. WRB promoted and continues to promote its services through the exclusive use of slogans including "Get Hammered, "Get Nailed," and "Got Wood" in a variety of media since 2000, including on its website, in fliers, and on stickers used in marketing its service.

22. WRB uses its distinctive trade dress in combination with its name, logo, and slogans to promote the service offered. The trade dress, commonly referred to as the "Hammerschlagen Stump," is depicted below:

4



23. WRB has offered its services, either directly or through exclusive licensing, throughout the United States, from Florida to Washington to Hawaii.

24. WRB has operated in Minnesota every year since its founding in 1999, offering the game at various private parties, beer festivals, Oktoberfest branded events, and expos throughout the state.

25. WRB owns U.S. Registration No. 5,548,112 for its trade dress as depicted above. It was registered on August 28, 2018. The registration describes WRB's trade dress as follows:

> The mark consists of a three-dimensional configuration constituting trade dress comprising of a. cylindrical cross-section of a tree with nails positioned around the outer circumference of its upward facing flat circular surface, and a cross-peen hammer whose head is shaped in the manner depicted in the drawing.

26. WRB's trade dress registration also claims first use of the trade dress in commerce as early as February 1999. A copy of the trade dress registration is attached as Exhibit A.

27. WRB is the owner of U.S. Registration No. 4,804,117 for the service mark Hammer-Schlagen. The service mark was registered on September 1, 2015, claiming first

5

use in commerce as early as February 1999 and is incontestable. A copy of the registration is attached as Exhibit B.

## THE INFRINGEMENT

28. Defendant Sara Jespersen owns and operates The Lumberjack Company, which she formed in January 2019.

29. On February 3, 2020, Jespersen, on behalf of The Lumberjack Company, entered into a licensing agreement with WRB. A true and correct copy of the license is attached as Exhibit C.

30. The license permits The Lumberjack Company to offer Hammer-Schlagen at its business, using WRB's trade dress and trademarks.

31. The license allows WRB to retain quality control over the use of its intellectual property and contains express quality control standards.

32. The quality control standards are essential for WRB to maintain the goodwill associated with its trade dress and trademarks.

33. By entering into the license, The Lumberjack Company "acknowledge[s] that WRB owns the Trademarks and retains all such ownership rights," and "agree[s] and acknowledge[s] that the rights of WRB in and to each individual Trademark are valid and enforceable."

34. Jespersen agreed the Lumberjack Company would only use WRB's intellectual property during the term, and agreed upon termination it would "immediately cease and desist [ ] use of the Trademarks."

35. The Lumberjack Company also agreed that it is "fully aware of the intellectual property rights of WRB in and to each element of intellectual property it owns." It agreed any infringement would be "committed knowingly and willfully."

36. The Lumberjack Company also agreed that, in the event WRB had to enforce the license, WRB would be entitled to protect its intellectual property by obtaining an injunction, and that The Lumberjack Company would be responsible for WRB's attorneys' fees and court costs.

37. A few months after entering into the license, the COVID pandemic hit, shutting down The Lumberjack Company.

38. In May 2020, Jespersen told WRB she did not want to renew the license and intended to let the license expire in February 2021.

39. In December, WRB sent a license renewal offer to The Lumberjack Company, as the current one was set to expire on February 2, 2021. The Lumberjack Company rejected the offer and did not renew the license.

40. On June 19, 2021, WRB was offering its brand of entertainment at the Food Truck Extravaganza, an event held at the Washington County Fairgrounds. WRB's CEO, James Martin, was overseeing the operations. He was approached by an attendee claiming to have played Hammer-Schlagen at The Lumberjack Company's facility.

41. After the event concluded, Mr. Martin went to The Lumberjack Company to investigate.

42. The Lumberjack Company had four Hammer-Schlagen games set up, identical to WRB's registered trade dress.

43. The patrons playing Hammer-Schlagen identified the game by name.

44. The Lumberjack Company employees solicited Martin to play Hammer-Schlagen by name.

45. It offered the service for $2 per game per person.

46. On information and belief, The Lumberjack Company has been offering Hammer-Schlagen as a regular service since it reopened in 2021. Its website includes a virtual tour, in which two Hammer-Schlagen stumps are visible.

47. After witnessing The Lumberjack Company intentionally infringing WRB's trade dress and trademark, Martin contacted Jespersen. He asked: "if you had any interest in using our trademarks?" She responded, stating "we don't plan to renew the license at this time. We appreciated working with you and wish you the best."

48. Defendants' use of WRB's Hammer-Schlagen stump is likely to cause confusion as to the source, sponsorship, or origin of its services.

49. Defendants' use of WRB's brand Hammer-Schlagen in reference to the Hammer-Schlagen stump is likely to cause confusion as to the source, sponsorship, or origin of its services.

50. Defendants' conduct is a breach of the license agreement, including the restriction from using the licensed intellectual property after termination of the license.

51. Defendants acted intentionally and in bad faith, with the intent to profit from WRB's good will associated with its intellectual property.

52. Defendants intentionally concealed their breach and intentional infringement, further demonstrating their bad faith.

## COUNT I
## INFRINGEMENT OF REGISTERED MARKS
## 15 U.S.C. § 1114

53. WRB owns the trade dress rights to a configuration of a nail-driving game. The USPTO has granted registration to WRB's trade dress.

54. WRB owns the trademark Hammer-Schlagen, which has been registered and is incontestable.

55. The Lumberjack Company used WRB's trademark and trade dress in a manner that is likely to cause confusion and in fact caused confusion.

56. The Lumberjack Company's use of the trademark and trade dress is willful and intended to confuse the public.

57. The Lumberjack Company is using a mark and presentation that is identical to or substantially indistinguishable from WRB's registered trademark and trade dress.

58. The Lumberjack Company's use of WRB's trademark and trade dress violates 15 U.S.C. § 1114(1)(a) and (b).

59. The Lumberjack Company's use of WRB's trademark and trade dress constitutes counterfeiting as defined in 15 U.S.C. §§ 1116(d).

60. Sara Jespersen oversaw, was responsible for, and caused The Lumberjack Company to use WRB's trademark and trade dress in such a manner.

61. The Lumberjack Company's use of WRB's trademarks and trade dress has caused WRB irreparable harm. WRB has also suffered damages as a result of The Lumberjack Company's use of the trademark and trade dress.

## COUNT II
## FALSE DESIGNATION
## 15 U.S.C. § 1125(A)(1)(A)

62. WRB owns the trade dress rights to the configuration of a nail-driving game. The USPTO has granted registration to WRB's trade dress.

63. WRB owns the trademark Hammer-Schlagen, which has been registered and is incontestable.

64. The Lumberjack Company used WRB's trademark and trade dress in a manner that "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person," violating 15 U.S.C. § 1125(a)(1)(A).

65. The Lumberjack Company's use of the trademark and trade dress is willful and without authorization.

66. The Lumberjack Company's use of WRB's trademarks and trade dress has caused WRB irreparable harm. WRB has also suffered damages as a result of The Lumberjack Company's use of the trademark and trade dress.

## COUNT III
## BREACH OF CONTRACT

67. The Lumberjack Company and WRB entered into a contract on February 3, 2020, granting The Lumberjack Company rights to use WRB's trademarks and trade dress.

68. The contract prohibited The Lumberjack Company from using WRB's trademarks and trade dress after the contract terminated. This was a material term of the contract.

69. The contract had a one-year term and renewed unless otherwise terminated.

70. The Lumberjack Company terminated the contract effective February 2, 2021, by not renewing it.

71. The Lumberjack Company breached the contract by continuing to use WRB's trademark and trade dress after the contract terminated.

72. The Lumberjack Company's breach has caused and continues to cause WRB irreparable harm to its reputation and goodwill associated with its intellectual property.

73. The Lumberjack Company's breach has caused and continues to cause WRB damages, in an amount to be determined at trial.

## COUNT IV
## UNFAIR COMPETITION
## MINN. STAT. § 325D.44

74. Minnesota Statute Section 325D.44 prohibits unfair competition, including "pass[ing] off goods or services as those of another; caus[ing] likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; caus[ing] likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another."

75. The Lumberjack Company has engaged in unlawful, unfair, or fraudulent business acts of unfair competition in violation of Minnesota Statue and Minnesota common law through its unauthorized use of WRB's trademark and trade dress.

76. If The Lumberjack Company is not enjoined from using WRB's marks, it will continue to cause consumer confusion in violation of Minn. Stat. § 325D.44.

Based on the above, Plaintiff WRB, Inc. requests that the Court:

1. Preliminarily and permanently enjoin Defendants from infringing WRB's trademarks and trade dress pursuant 15 U.S.C. § 1116(a);

2. Award WRB all profits Defendants realized from its trademark and trade dress infringement pursuant to 15 U.S.C. § 1117(a);

3. Award WRB its actual damages caused by Defendants' trademark infringement and counterfeiting pursuant to 15 U.S.C. § 1117(a);

4. Award WRB treble damages for counterfeit pursuant to 15 U.S.C. § 1117(b);

5. Alternatively, award WRB statutory damages for counterfeit pursuant to 15 U.S.C. § 1117(c) of not less than $1,000 and not more than $2,000,000 per counterfeit per mark;

6. Award WRB its costs, expenses, and reasonable attorney's fees pursuant to 15 U.S.C. § 1117(a), Minn. Stat. § 325D.45, and the contract; and

7. Grant such other and further relief as the Court deems just and equitable.

Dated: July 12, 2021                                          **RUBRIC LEGAL LLC**

                                                                                  _/s/ Michael H. Frasier
Chad A. Snyder (#288275)
Michael H. Frasier (#387704)
111 Third Ave. S – Suite 110
Minneapolis, MN 55401
612.465.0074
chad@rubriclegal.com
michael@rubriclegal.com

Attorneys for WRB, Inc.